IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


ROBERT ORUM and CONNIE ORUM,

     Plaintiffs,

v.                                  Civil Action No. 5:17CV142
                                                 (STAMP)

LIBERTY INSURANCE CORPORATION,
CORELOGIC, INC.,
RELIABLE REPORTS OF TEXAS, INC.,
JOHN DOE COMPANY and
JANE DOE COMPANY,

     Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT LIBERTY INSURANCE CORPORATION'S
RENEWED MOTION FOR SUMMARY JUDGMENT AND
GRANTING AS FRAMED PLAINTIFFS' REQUEST FOR DISCOVERY
AS TO COUNT V OF THE PLAINTIFFS' AMENDED COMPLAINT**


I.  Background

The defendant removed this civil action to this Court on September 11, 2017. ECF No. 1. The plaintiffs originally filed their complaint in the Circuit Court of Ohio County, West Virginia. ECF No. 1-2. The plaintiffs later filed an amended complaint. ECF No. 68. The amended complaint asserts claims arising out of a fire that burned the plaintiffs' house to the ground. Id. at 5. The plaintiffs allege that the defendant, Liberty Insurance Corporation ("Liberty"), in bad faith, failed to pay the plaintiffs' homeowners insurance claim. Id. at 12. The plaintiffs further allege that Corelogic, Inc. ("Corelogic") by and through its agent, Reliable Reports of Texas, Inc. ("Reliable Reports"), performed a homeowners property inspection under the direction and supervision of

defendant Liberty. ECF No. 68 at 6. The plaintiffs state that Corelogic, through defendant Reliable Reports documented no exterior premises risks and documented multiple wood-burning stoves and exterior roof flues/vents. Id. at 7. The plaintiffs allege that Corelogic, through defendant Reliable Reports, failed to inspect the plaintiffs' property at issue and provided an inspection report to defendant Liberty that covered the wrong property.[1] Id. at 7-8. What is titled as Count I is a list of general allegations and statements regarding this Court's jurisdiction and venue. Id. at 2-5. Count II is a claim of negligence against all the defendants. Id. at 5-11. Count III is a claim of first party bad faith against defendant Liberty. Id. at 11-13. Count IV is a claim of common law bad faith against defendant Liberty. Id. at 13-14. Count V is a claim based on West Virginia Code § 33-11-4 against defendant Liberty. Id. at 14-18. Count VI is a claim of breach of the implied covenant of good faith and fair dealing against defendant Liberty. Id. at 18-19. Lastly, what is titled as Count VII is a description of the damages the plaintiffs seek to recover from all the defendants. Id. at 19-21.

On April 12, 2019, defendant Liberty filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 57. On May 17, 2019, the plaintiffs filed a motion for leave to amend their initial complaint to add additional defendants

---

[1]On August 21, 2019, the plaintiffs filed a notice of dismissal without prejudice of defendant Corelogic. ECF No. 77.

and to allege a new claim of negligence against defendant Liberty. ECF No. 63. On June 28, 2019, this Court granted the plaintiffs' motion for leave to amend their initial complaint. ECF No. 67. This Court also denied defendant Liberty's motion for summary judgment (ECF No. 57) without prejudice, in light of this Court's order granting the plaintiffs' motion for leave to amend their complaint. ECF No. 69. This Court then scheduled a status and scheduling conference that was held on September 3, 2019. ECF No. 78. At the conference, the parties agreed to certain dispositive motion deadlines regarding the issue of rescission of the insurance policy. ECF No. 82.

Defendant Liberty then timely filed a renewed motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 87. In its memorandum in support of summary judgment, defendant Liberty contends that there are no genuine issues of material fact with respect to the plaintiffs' misrepresentations to defendant Liberty in the insurance application and the materiality of these misrepresentations, indicating that it would not have issued the policy if the plaintiffs had provided correct information. Id. at 1, 7. Specifically, defendant Liberty states that the plaintiffs made various false statements in their insurance application: (1) that they never had any insurance declined, canceled or non-renewed in the past twelve months, although the plaintiffs were discovered to have received a Notice of Cancellation by a prior homeowners insurer, Foremost; (2) that

3

there was not any business conducted at the insured location; and (3) that there were no physical conditions on the property in need of repair which clearly present a likelihood of injury. Id. at 5-6. Therefore, defendant Liberty asserts that it was entitled to rescind the policy based on such material misrepresentations. Id. at 7, 10-11. Moreover, with respect to the plaintiffs' negligence claim, defendant Liberty states that the plaintiffs have failed to identify any duty defendant Liberty owed to the plaintiffs. Id. at 12. Specifically, defendant Liberty states that its decision to try to inspect the plaintiffs' property to confirm insurability does not mean that it was required to inspect the plaintiffs' property or that defendant Liberty had to disclose any results to the plaintiffs. Id. Further, defendant Liberty states that even if defendant Reliable Reports inspected the correct property, such an inspection would not have revealed the plaintiffs' misrepresentation regarding the cancellation of their prior insurance, which as a matter of law, is a material representation that led defendant Liberty to properly rescind the policy. Id. at 12-13.

The plaintiffs filed a response in opposition to defendant Liberty's renewed motion for summary judgment. ECF No. 91. The plaintiffs assert that defendant Liberty engaged in "post claim underwriting" which violated contractual obligations of good faith and fair dealing and insurance industry standards. Id. at 2. The plaintiffs state that defendant Liberty could have discovered that

the plaintiffs had a trampoline and a pool if it inspected the correct property, but rather chose to accept premium payments. Id. at 3. The plaintiffs also contend that defendant Liberty is vicariously liable for the acts and omissions of defendant Reliable Reports. Id. at 4. As part of their response, the plaintiffs attach a Notice of Cancellation from Foremost (ECF No. 91-1) and the affidavit of Robert Orum (ECF No. 91-2). Lastly, the plaintiffs request additional time to conduct depositions pursuant to Federal Rule of Civil Procedure 56(d)(2). Id. at 8.

Defendant Liberty filed a reply to the plaintiffs' response in opposition to its renewed motion for summary judgment. ECF No. 93. First, defendant Liberty notes that certain documents attached to the plaintiffs' response in opposition to its prior motion for summary judgment (ECF No. 61-5) are not affidavits, because those documents are not sworn or notarized; therefore, the plaintiffs did not refute defendant Liberty's renewed motion for summary judgment. Id. at 5. However, defendant Liberty states that even if the Court considers what is contained in those documents (ECF No. 61-5) or in Robert Orum's affidavit (ECF No. 91-2), it is entitled to summary judgment due to the plaintiffs' misrepresentation regarding the Notice of Cancellation from Foremost, which defendant Liberty contends is material as a matter of law. Id. at 6-10. Moreover, defendant Liberty maintains that it did not waive its right to rescind the policy by attempting to investigate the property or due to the passage of time. Id. at 10-13. Further, defendant Liberty

notes that the plaintiffs' spoilation argument is without merit since there is no evidence that a recording of an alleged telephone call exists. Id. at 13-14. Moreover, defendant Liberty contends that the plaintiffs have failed to introduce admissible evidence regarding the substance of the conversation. Id. at 14. Lastly, defendant Liberty contends that the plaintiffs' request for additional time in order to take depositions should be denied, stating that the plaintiffs have had sufficient time to take depositions and have not provided any specific reasons that warrant additional time to take depositions. Id. at 14-16.

## II. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>     (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v.

6

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the

motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986).

III.  Discussion

Following its review of the parties' motions and for the
reasons set forth below, this Court grants in part and denies in
part defendant Liberty's renewed motion for summary judgment (ECF
No. 87).  Specifically, defendant Liberty is entitled to summary
judgment on Counts I, II, III, IV, and VI of the plaintiffs'
amended complaint.  However, further discovery is needed as to
Count V of the plaintiffs' amended complaint.  This Court will
proceed to address each of the plaintiffs' counts in the manner
presented in the amended complaint.

A. Defendant Liberty is Entitled to Summary Judgment as to Count I
of the Plaintiffs' Amended Complaint and Construes Count I as a
Factual Predicate for the Other Counts in the Amended Complaint.

Count I of the plaintiffs' amended complaint is a list of
general allegations, and statements regarding this Court's
jurisdiction and venue.  Id. at 2-5.  Since that particular count
does not seek any specific relief, this Court construes Count I as
a factual predicate and not a claim for seeking relief for damages.
Accordingly, this Court grants defendant Liberty's renewed motion
for summary judgment as to Count I of the plaintiffs' amended
complaint and will construe Count I as a factual predicate for the
other counts in the plaintiffs' amended complaint.

B. <u>Defendant Liberty is Entitled to Summary Judgment as to Count II of the Plaintiffs' Amended Complaint.</u>

The plaintiffs assert in their amended complaint that defendant Liberty owed the plaintiffs a "non-delegable" duty to inform the plaintiffs that the wrong residence had been inspected for exterior insurability risks. ECF No. 68 at 10. The plaintiffs allege that defendant Liberty directed Corelogic and defendant Reliable Reports in their negligent and/or grossly negligent, reckless, willful, and wanton failure to inspect the correct residence. <u>Id.</u> at 11. The plaintiffs state that in doing so, defendant Liberty proximately caused and thereby prevented the plaintiffs from securing other homeowners insurance coverage prior to the fire at issue. <u>Id.</u>

"To recover in an action based on negligence the plaintiff must prove that the defendant was guilty of . . . negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains." Syl. Pt. 1, <u>Atkinson v. Harman</u>, 151 W. Va. 1025, 158 S.E.2d 169, 171 (1967) (citation omitted). "These elements of duty, breach, and injury are essential to actionable negligence and in the absence of any of them the action must fall." <u>Id.</u> at 173; <u>see also</u> <u>McNeilly v. Greenbrier Hotel Corp.</u>, 16 F. Supp. 3d 733, 738 (S.D. W. Va. 2014) ("The basic elements of a negligence claim are duty, breach of that duty, causation, and damages.").

1. <u>Defendant Liberty Did Not Owe the Plaintiffs a Duty to Inspect the Correct Property.</u>

"Duty is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff, and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk." <u>Robertson v. LeMaster</u>, 171 W. Va. 607, 611, 301 S.E.2d 563, 568 (1983) (internal quotation marks omitted). The scope of the duty owed to another is focused on the foreseeability of injury. <u>Id.</u> "Due care is a relative term and depends on time, place, and other circumstances. It should be in proportion to the danger apparent and within reasonable anticipation." Syl. Pt. 2, <u>Johnson v. United Fuel Gas Co.</u>, 112 W. Va. 578, 166 S.E. 118 (1932). "The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" <u>Marcus v. Staubs</u>, 230 W. Va. 127, 137, 736 S.E.2d 360, 370 (2012) (internal quotation marks omitted). It is a court's task to determine "in general terms whether the type of conduct at issue is sufficiently likely to result in the kind of harm experienced based on the evidence presented." <u>Id.</u> at 137-38.

Under the circumstances of this case, defendant Liberty does not assume responsibility to perform an inspection principally for the benefit of the plaintiffs. Specifically, when defendant Liberty inspected the plaintiffs' premises for hazards, that inspection did not in itself demonstrate an undertaking to render

an inspection and services to the plaintiffs.  The plaintiffs have not provided sufficient evidence for this Court to conclude that defendant Liberty's inspection was conducted other than to serve its interests.  Moreover, it was appropriate for defendant Liberty to rely on information that was contained in the plaintiffs' application.  "[I]nsurers can rely on the information contained in [ ] applications, without conducting further investigation, when completing their underwriting investigations."  <u>Massachusetts Mutual Life Ins. Co. v. Jordan</u>, 2011 WL 1770435, at *5 (citing <u>Wesley v. Union Nat'l Life</u>, 919 F. Supp. 232, 235 (S.D. Miss. 1995); <u>Harper v. Fidelity & Guaranty Life Ins. Co.</u>, 234 P.3d 1211, 1218-19 (Wyo. 2010); <u>Hornback v. Bankers Life Ins. Co.</u>, 176 S.W.3d 699, 704-05 (Ky. App. 2005).

2. <u>Even if Defendant Liberty Had a Duty to Inspect the Correct Premises, Failure to Inspect the Correct Premises Was Not the Proximate Cause of the Plaintiffs' Injuries.</u>

The "proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred."  <u>Sergent v. City of Charleston</u>, 209 W. Va. 437, 446 549 S.E.2d 311, 320 (2001).  As defendant Liberty correctly noted, even if the correct property was inspected, such an inspection would not have revealed the plaintiffs' misrepresentation regarding the cancellation of their prior insurance.  As explained in greater detail below, the plaintiffs' material misrepresentations provided a valid basis for defendant Liberty to rescind the policy.  <u>See</u> <u>Gouge v. Penn America Ins. Co</u>,  No. 2:04-1083, 2005 WL 1639291, at

*6 n.7 (S.D. W. Va. July 12, 2005) ("Failure to disclose a prior cancellation, like a prior declination of coverage, is, as a matter of law material either to the acceptance of the risk, or to the hazard assumed by the insurer.").

Accordingly, defendant Liberty is entitled to summary judgment as to Count II of the plaintiffs' amended complaint.

C. Defendant Liberty is Entitled to Summary Judgment as to Count III of the Plaintiffs' Amended Complaint.

1. There is No Genuine Dispute of Material Fact That the Plaintiffs Engaged in Certain Misrepresentations On Their Liberty Insurance Application. Moreover, Defendant Liberty Met Its Burden of Proving That Such Misrepresentations Were "Material."

Count III of the plaintiffs' amended complaint is a claim of first-party bad faith. "For definitional purposes, a first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured." State ex rel. Allstate Ins. Co. v. Gaughan, 203 W. Va. 358, 369-70, 508 S.E.2d 75, 86-87 (1998); see also Marshall v. Saseen, 192 W. Va. 94, 100, 450 S.E.2d 791, 797 (1994); State ex rel. State Farm Mut. Auto Ins. Co. v. Canady, 197 W. Va. 107, 475 S.E.2d 107 (1996). First-party bad faith actions arise from "a duty to settle with its insured on a claim for which the insured was legally entitled to recover." Jordache Enter., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 204 W. Va. 465, 485 513 S.E.2d 692, 712 (1998) (citing Marshall, 192 W. Va. at 94, 450 S.E.2d at 791).

However, misrepresentations and incorrect statements may prevent recovery. Specifically, West Virginia Code § 33-6-7 states that:

> Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent recovery under the policy unless:
>
> (a) Fraudulent; or
>
> (b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

W. Va. Code § 33-6-7. The Supreme Court of Appeals of West Virginia has indicated that a "material" misrepresentation "must relate to either the acceptance of the risk insured or to the hazards assumed by the insurer." <u>Powell v. Time Ins. Co.</u>, 181 W. Va. 289, 297, 382 S.E.2d 342, 350 (1989). The test for determining whether a representation is material is "whether the insurer in good faith would either not have issued the policy, or would not have issued as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise." <u>Id.</u> Subsection (c) criteria set forth in West Virginia Code § 33-6-7 "are based on an objective standard that an 'insurer in good faith' would have taken

alternative action had the 'true facts been known.'" <u>Id.</u>
"[N]either West Virginia Code § 33-6-7(b) nor (c) requires that an
insurer prove the subjective element that an insured specifically
intended to place misrepresentations, omissions, concealments of
fact, or incorrect statements on an application in order for the
insurer to avoid the policy." <u>Massachusetts Mut. Life Ins. Co. v.</u>
<u>Thompson</u>, 194 W. Va. 473, 478, 460 S.E.2d 719, 724 (1995). "It is
generally held that where an insurer seeks to avoid the policy
based on a material misrepresentation, this assertion is in the
nature of an affirmative defense which the insurer must prove by a
preponderance of the evidence." <u>Powell</u>, 181 W. Va. at 297, 382
S.E.2d at 350.

Here, there are no issues of material fact with respect to the
plaintiffs' misrepresentations to defendant Liberty. Specifically,
the plaintiffs made various false statements in their insurance
application: (1) They never had any insurance declined, canceled or
non-renewed in the past twelve months, although the plaintiffs were
discovered to have received a Notice of Cancellation by a prior
homeowners insurer, Foremost; (2) There was not any business
conducted at the insured location; and (3) There were no physical
conditions on the property in need of repair which clearly present
a likelihood of injury. For support, defendant Liberty attaches a
copy of the plaintiffs' home insurance application with defendant
Liberty, demonstrating the plaintiffs' misrepresentations. ECF No.
87-3 at 2. Defendant Liberty also attaches two affidavits. One

14

affidavit is the affidavit of Nicholas J. Marrangoni ("Mr. Marrangoni"), the Director of Complex Loss Issues for defendant Liberty, indicating that according to the plaintiffs' signed application, the plaintiffs indicated that they never had any insurance declined, canceled, or non-renewed in the past 12 months, that there was not any business conducted at the insured location, and that were there were no physical conditions on the property in need of repair which clearly present a likelihood of injury. ECF No. 87-1 at 2. Mr. Marrangoni indicates that defendant Liberty would not have written the policy if the plaintiffs had advised defendant Liberty of the prior cancellation, that they were operating a business, and that they had dangerous conditions on the property, specifically an unfenced swimming pool and trampoline. Id. The other affidavit is the affidavit of Edward Mitchell ("Mr. Mitchell"), the Senior Field Claims Resolution Specialist for defendant Liberty, who similarly states that the plaintiffs provided incorrect information on their homeowners insurance application. ECF No. 87-5 at 2. Mr. Mitchell states that during the claim investigation, defendant Liberty discovered that just days before the plaintiffs applied to defendant Liberty for coverage, the plaintiffs were issued a Notice of Cancellation by a prior homeowners insurer, Foremost. Id. Moreover, Mr. Mitchell states that during the claim investigation, it was discovered that the plaintiffs were running a business on their property and that there were dangerous conditions on their property. Id. at 2-3. To

confirm such information, defendant Liberty attaches a Notice of
Cancellation from Foremost.   ECF No. 87-6.   Moreover, defendant
Liberty attaches the deposition transcript of Connie Orum where she
confirms that she provided the answers to the Liberty insurance
application, that there was a swimming pool on the property at
issue, that the swimming pool was there when she signed the Liberty
insurance application, that only the deck behind the swimming pool
was fenced, and that there was a trampoline on the property at
issue.   ECF No. 87-2 at 6-8.   Moreover, Connie Orum states that
Foremost declined coverage within the past 12 months of the
application with defendant Liberty.   ECF No. 87-7 at 4.

    After review of the parties' briefs and attached exhibits,
this Court finds that there is no genuine dispute of material fact
that the plaintiffs engaged in certain misrepresentations on their
application with defendant Liberty.   Moreover, this Court finds
that defendant Liberty met its burden of proving that such
misrepresentations by the plaintiffs were "material" by a
preponderance of the evidence.   See Gouge, 2005 WL 1639291, at *6
("It is difficult for one to imagine a fact more material either to
the acceptance of the risk, or to the hazard assumed by the insurer
than that other potential providers had previously declined
coverage.") (internal quotation marks omitted).

2. <u>Defendant Liberty Did Not Waive Its Right To Challenge That Misrepresentation Based on Failure to Conduct a Reasonable Inquiry</u>. <u>Defendant Liberty's Decision to Accept the Information Contained in the Insurance Application and Issue a Policy Thereafter Has No Impact on the Effect of the Plaintiffs' Misrepresentations, and the Recision of the Insurance Policy Due to Such Misrepresentations.</u>

The next question is whether defendant Liberty waived its right to challenge the plaintiffs' misrepresentations based on an alleged failure to conduct a reasonable inquiry or whether defendant Liberty can assert misrepresentation as a defense despite the plaintiffs' allegations that defendant Liberty engaged in "post claim underwriting."

"An insurer has an obligation to attempt to ascertain the basis of the insured's interest in property prior to issuing a contract to insure the property. The insurer cannot issue a policy and collect premiums thereunder and later complain that the insured's interest was overvalued due to an omission by the insured if the insurer never attempted to ascertain that interest through reasonable inquiry." <u>Filiatreau v. Allstate Insurance Co.</u>, 178 W. Va. 268, 271, 358 S.E.2d 829, 832. (1987)

The facts presented in this civil action are similar to the facts presented in <u>Powell</u>, 181 W. Va. 289, 382 S.E.2d 342. In <u>Powell</u>, a life policy beneficiary brought an action to recover proceeds under a policy. In that case, the defendant insurance company relied on West Virginia Code § 33-6-7(c), asserting that it would not have issued the policy if the true facts had been made known by plaintiff insured. <u>Powell</u>, 181 W. Va. at 197, 382 S.E.2d at 350. The defendant insurance company presented substantial

evidence that plaintiff insured made a number of misstatements in his insurance application, some of which the plaintiff insured should have known of at the time he filled out his application. Id. at 298. The Supreme Court of Appeals of West Virginia found that the defendant insurance company met its burden of proving a material misrepresentation, and, in the absence of controverting evidence, found that the defendant was entitled to a directed verdict. Id. at 298.

Moreover, this Court notes that a "multitude of courts [ ] have concluded that insurers can rely on the information contained in [ ] applications, without conducting further investigation, when completing their underwriting investigations." Jordan, 2011 WL 1770435, at *5. It would be unreasonable to require defendant Liberty to obtain all relevant information to confirm the plaintiffs' answers in their insurance application during its underwriting investigation, particularly when the plaintiffs have not alleged that defendant Liberty should have any reason to know that the plaintiffs would engage in the specific misrepresentations that served as the basis for recision of the policy. See Jordan, 2011 WL 1770435, at *5 ("[R]equiring an insurer to obtain all relevant medical records during its underwriting investigation when the insurer is not aware of treatment by a health care provider, particularly when the insurer is unaware of the treatment in question because of the insured's misrepresentation, would be an absurd result.") (emphasis omitted). While defendant Liberty was

18

not limited to the plaintiffs' application in its underwriting investigation, this does not mean that defendant Liberty was required to consider or investigate materials or other information outside of the application in deciding whether to issue the policy when the application presented no issues indicating a need for follow-up investigation. Id. (explaining that plaintiff insurance company was not required to look beyond the application in deciding whether to issue the policy when the application presented no "red flags" indicating a need for a follow-up investigation). Therefore, defendant Liberty's decision to accept the information and issue a policy after the application has no impact on the effect of the plaintiffs' misrepresentations, and the recision of the insurance policy due to such misrepresentations.

Accordingly, defendant Liberty is entitled to summary judgment as to Count III of the plaintiffs' amended complaint.

D. Defendant Liberty is Entitled to Summary Judgment as to Count IV of the Plaintiffs' Amended Complaint.

Count IV of the plaintiffs' amended complaint is a claim of common law bad faith. A duty to act in good faith arises when a special relationship has been formed between two parties, and is derived in insurance claims from the contractual relationship that an insurer has with an insured. As such, in West Virginia, a common law duty to act in good faith is recognized between insurers and insureds. Elmore v. State Farm Mutual Automobile Ins. Co., 202 W. Va. 430, 434, 504 S.E.2d 893, 897 (1998).

Because defendant Liberty met its burden of proving a material misrepresentation by the plaintiffs by a preponderance of the evidence, defendant Liberty properly rescinded the plaintiffs' policy. Accordingly, defendant Liberty is entitled to summary judgment as to Count IV of the plaintiffs' amended complaint. See Jordache, 204 W. Va. at 484-85, 513 S.E.2d at 711-12 ("[T]he determination that there is no coverage . . . extinguishes the common law bad faith . . . claim.").

E. Defendant Liberty is Not Entitled to Summary Judgment as to Count V of the Plaintiffs' Amended Complaint.

Count V of the plaintiffs' amended complaint is a claim based on West Virginia Code § 33-11-4(9), commonly referred to as the West Virginia Unfair Trade Practices Act. In pertinent part, West Virginia Code § 33-11-4(9) provides:

(9) Unfair claim settlement practices. — No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

. . .

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

A plaintiff must establish two elements for relief under West Virginia Code § 33-11-4(9): (1) The insurer violated West Virginia Code § 33-11-4(9) in the handling of the claimant's claim and (2) The insurer committed such violations with such frequency as to indicate a general business practice. <u>Holloman v. Nationwide Mut. Ins. Co.</u>, 217 W. Va. 269, 275 617 S.E.2d 816, 823 (2005).

As stated in <u>Stonewall Jackson Mem'l Hosp. v. American United Life Ins. Co.</u>:

[t]o maintain a private action based upon alleged violations of W. Va. Code § 33-11-4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W. Va. Code § 33-11-4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can

be considered a 'general business practice' and can be
distinguished by fair minds from an isolated event.

206 W. Va. 458, 465, 525 S.E.2d 649, 656 (1999). "[M]ultiple
violations . . . occurring in the same claim would be sufficient."
Dodrill v. Nationwide Mut. Ins. Co., 201 W. Va. 1, 12, 491 S.E.2d
1, 12 (1996); United Bankshares, Inc. v. St. Paul Mercury Ins. Co.,
No. 6:10CV00188, 2010 WL 4630212, at *6 (S.D. W. Va. 2010)
(citations omitted). The focus is on finding a "frequent and
rather general disregard for the several proscriptions separately
set out in the relevant statute." Dodrill, 201 W. Va. at 12-13,
491 S.E.2d at 12-13.

This Court finds that it is premature to determine whether the
plaintiffs have failed to establish that defendant Liberty's
behavior under the circumstances arise to a violation of West
Virginia Code § 33-11-4(9). This Court previously granted
defendant Liberty's motion to bifurcate and stay discovery as to
all issues other than the propriety of defendant Liberty's
rescission of the plaintiffs' insurance policy (ECF No. 39). In
light of this bifurcation, this Court's prior order establishing
discovery and dispositive motion deadlines pertained only to the
issue of rescission. ECF No. 49. Even though this Court finds
that defendant Liberty properly rescinded the policy at issue, that
finding does not dispose of the plaintiffs' claim based on West
Virginia Code § 33-11-4(9). See Jordan, 2011 WL 1770435, at *5-7
(analyzing the defendant's counterclaim under the applicable case
law pertaining to W. Va. Code § 33-11-4(9) despite finding that the

insurance company established grounds for rescission under W. Va. Code § 33-6-7).

Accordingly, defendant Liberty's motion for summary judgment is denied with respect to the plaintiffs' claim based on the West Virginia Unfair Trade Practices Act (Count V).  The Court will enter a separate order pertaining to discovery between the plaintiffs and defendant Liberty as to Count V.[2]

F. <u>Defendant Liberty is Entitled to Summary Judgment as to Count VI of the Plaintiffs' Amended Complaint.</u>

Count VI of the plaintiffs' amended complaint is a claim based on a breach of the implied covenant of good faith and fair dealing. Under West Virginia law, "a claim for breach of the implied

---

[2]Federal Rule of Civil Procedure 56(d)(2) states:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)  defer considering the motion or deny it;

(2)  allow time to obtain affidavits or declarations or to take discovery; or

(3)  issue any other appropriate order.

Fed. R. Civ. P. 56(d)(2).  Here, the plaintiffs attach the affidavit of Robert Orum who states that "he understands the depositions of Defendant Liberty Mutual's employees or agents have not yet occurred," and that he "understands after detailed explanations and counsel that depositions are critical and necessary for prosecution of this case."  ECF No. 91-2 at 1.  This Court agrees that discovery is necessary as to Count V of the plaintiffs' amended complaint.  However, with respect to all other counts, this Court finds that the plaintiffs have had sufficient time to conduct discovery as to the issue of rescission; therefore, the plaintiffs' request for additional discovery as to all other counts is denied.

covenant of good faith and fair dealing can only survive if the [plaintiff] pleads an express breach of contract claim." Wittenberg v. Wells Fargo Bank, N.A., 852 F. Supp. 2d 731, 750 (N.D. W. Va. 2012) (internal citation omitted); see also Clendenin v. Wells Fargo Bank, N.A., No. 2:09CV557, 2009 WL 4263506, at *5 (S.D. W. Va. Nov. 24, 2009) ("Because West Virginia does not permit a stand-alone claim for a breach of the covenant of good faith and fair dealing, this claim will live or die by the breach-of-contract claim.").

As this Court finds that defendant Liberty properly rescinded the policy at issue, there is no contract that defendant Liberty can breach. See Jordan, 2011 WL 1770435, at *6 (dismissing the defendant's breach of contract counterclaim due to its finding that the insurance company established grounds for rescission under W. Va. Code § 33-6-7).

Accordingly, defendant Liberty's motion for summary judgment is granted with respect to the plaintiffs' claim based on the implied covenant of good faith and fair dealing.

G. Defendant Liberty is Entitled to Summary Judgment as Framed as to Count VII of the Plaintiffs' Amended Complaint. However, this Court Permits the Plaintiffs to Proceed on the Damages Claim as Contained in the Addendum Clause With Respect to the Plaintiffs' Claim Based on the West Virginia Unfair Trade Practices Act.

In Count VII of the plaintiffs' amended complaint, the plaintiffs allege an independent cause of action for damages.

Under West Virginia law, a separate cause of action for damages does not exist. See Rodgers v. Southwestern Energy

Company, No. 5:16CV54, 2016 WL 3248437, at *5 (N.D. W. Va. June 13, 2016) ("West Virginia does not acknowledge a claim for damages as an independent cause of action."). West Virginia law clearly prohibits the plaintiffs from asserting a distinct cause of action for damages, and this is precisely what Count VII of the amended complaint seeks to accomplish. This separate cause of action for damages is not allowed under current law.

However, this Court notes that the plaintiffs will not be prevented from pursuing a damages claim as an additional potential remedy since they have requested such relief in the addendum clause of their amended complaint.

Thus, defendant Liberty's motion for summary judgment is granted as framed as to the plaintiffs' claim for damages as an independent cause of action, but this Court allows the plaintiffs to proceed on the damages claim as contained in the addendum clause, specifically with respect to the plaintiffs' claim based on the West Virginia Unfair Trade Practices Act (Count V).

## IV. Conclusion

For the reasons set forth above, defendant Liberty Insurance Corporation's motion for summary judgment (ECF No. 87) is GRANTED IN PART AND DENIED IN PART as to defendant Liberty Insurance Corporation. Further, the plaintiffs' request for discovery is GRANTED AS FRAMED. The Court will enter a separate order pertaining to discovery between the plaintiffs and defendant Liberty as to Count V.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     December 3, 2019

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE